```
          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF PUERTO RICO
```

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>**Plaintiff,**<br><br>v.<br><br>JOHVANNY AYBAR-ULLOA,<br><br>**Defendant.** | **CRIMINAL NO.** 13-518(JAG) |

## OPINION AND ORDER

GARCIA-GREGORY, D.J.

Before the Court is Johvanny Aybar-Ulloa's ("Defendant") Motion to Dismiss Indictment Based on Lack of Jurisdiction ("the Motion"). Docket No. 65. For the reasons set forth, the Motion is DENIED.

## FACTUAL BACKGROUND

On August 14, 2013, Defendant was charged in a two-count indictment with (1) conspiracy to possess with the intent to distribute a controlled substance on board a vessel without nationality and thus subject to the jurisdiction of the United States, in violation of the Maritime Drug Law Enforcement Act ("MDLEA" or "the Act"), 46 U.S.C. §§ 70502(c)(1)(A), 70503(a)(1), 70504(b)(1), 70506(a) and (b); and (2) aiding and abetting Johnny Sarmiento-Palacios and Johnny Felix-Terrero in

knowingly and intentionally possessing with the intent to distribute five or more kilograms of cocaine on board a vessel without nationality and thus subject to the jurisdiction to the United States, in violation of the MDLEA, 46 U.S.C. §§ 70502(c)(1)(A), 70503(a)(1), 70504(b)(1), 70506(a), and 18 U.S.C. § 2. Docket No. 14 at 1-2.

The indictment was based on the following set of facts: on August 9, 2013, the HMS Lancaster[1] launched its helicopter while on patrol in the Central Caribbean. Docket No. 1-1 at 3. Personnel on the helicopter spotted a small vessel bearing no insignia of nationality in international waters with the engines shut off. Id. The vessel contained, in plain view, numerous packages directly between the console and the forward cabin. Id. Thereupon the HMS Lancaster launched their small boat and conducted a right-of-visit approach. Id. Law enforcement personnel identified the three people on board, all non-United States citizens, and inquired as to the nationality of the vessel; the master of the vessel made no claim of nationality. Id. Then, law enforcement personnel declared the vessel as one without nationality and boarded it. Id. at 4. The three men were

---

[1] The HMS Lancaster is a Dutch warship. Docket No. 29 at 1. At the relevant dates, a Law Enforcement Detachment Team of the United States Coast Guard was embarked on the HMS Lancaster. Id. It was this team that conducted the right-of-approach questions and the right-of-visit boarding, as well as the subsequent arrests of all three defendants. Id.

transferred to the HMS Lancaster, together with the contraband. Id. A Narcotic Identification Kit confirmed that the packages contained cocaine, whereupon a total of 22 bales of cocaine were seized, yielding a gross weight of 721.5 kilograms. Id. The three defendants were taken into custody and transported to the District of Puerto Rico. Id.

**DISCUSSION**

1. Constitutionality of the MDLEA as Applied to Defendant

Defendant claims that the MDLEA is unconstitutional as applied to his conduct because the involved vessel was not a vessel of the United States, the crew was composed of non-citizens of the United States, and the vessel was intercepted in the high seas by a non-United States ship. Docket No. 65 at 2-3. As such, Defendant contends, there is no nexus between his conduct and the United States and, consequently, Congress lacks the authority to reach that conduct. Id. But because Defendant was apprehended on a stateless vessel in the high seas, his as-applied constitutional challenge fails.

The language of the MDLEA unambiguously contemplates the prosecution of drug-trafficking offenses outside the territory of the United States. 46 U.S.C. § 70503(b) ("[The MDLEA] applies even though the [proscribed] act is committed outside the territorial jurisdiction of the United States."). Given this

sweeping language, it is evident that Congress intended for the Act to have extraterritorial application, despite the United States courts' general unwillingness to give effect to criminal statutes outside our territorial boundaries. See also United States v. Matos-Luchi, 627 F.3d 1, 3-4 (1st Cir. 2010) (discussing Congress's intent to reach extraterritorial conduct in light of the language of additional sections of the MDLEA). Therefore, the remaining question is whether Congress has the authority pursuant to the Constitution and international law to reach Defendant's conduct under the facts of this case.

Stateless vessels navigating the high seas enjoy little or no protection under international law. Matos-Luchi, 627 F.3d at 5 ("Under international law, every vessel must sail under the flag of one and only one state; those that sail under no flag or more than one flag enjoy no legal protection."). See also United States v. Pinto-Mejia, 720 F.2d 248, 260 (2d Cir. 1983) ("[A] stateless vessel, which does not sail under the flag of one state to whose jurisdiction it has submitted, may not claim the protection of international law and does not have the right to travel the high seas with impunity."); United States v. Alvarez-Mena, 765 F.2d 1259, 1266 (5th Cir. 1985) ("[I]nternational law does not preclude any nation from exercising jurisdiction over stateless vessels on the high seas."). This principle has been recognized not only by United States courts, but also in the

1958 Convention on the High Seas. 13 U.S.T. 2313, T.I.A.S. No. 5200, 1958. Because the United States ratified the Convention on the High Seas, thus enacting international law, the First Circuit has held that "[the United States] has authority to treat stateless vessels as if they were its own . . . ." United States v. Smith, 680 F.2d 255, 258 (1st Cir. 1982), cert. denied, 459 U.S. 1110 (1983). Relying on Smith, the First Circuit in United States v. Victoria further determined that "the United States, as a matter of international law, may prosecute drug offenders on stateless ships found on the high seas." 876 F.2d 1009, 1010-11 (1st Cir. 1989) (citing Smith, 680 F.2d at 258).

Against this background, the Court must conclude that Congress has the constitutional authority, pursuant to international law, to reach Defendant's conduct. The MDLEA's jurisdictional requirement is that the proscribed conduct take place "on board . . . a vessel subject to the jurisdiction of the United States." 46 U.S.C. § 70503(a).[2] Section 70502, in

---

[2] Section 70503(a) provides:

Prohibitions.--An individual may not knowingly or intentionally manufacture or distribute, or possess with intent to manufacture or distribute, a controlled substance on board--
    (1) a vessel of the United States or a vessel subject to the jurisdiction of the United States; or
    (2) any vessel if the individual is a citizen of the United States or a resident alien of the United States.

Criminal No. 13-518 (JAG)                                          6

keeping with international law, defines the term "vessel subject to the jurisdiction of the United States" as including "a vessel without nationality." § 70502(c)(1)(A). This is precisely what the indictment alleges with regard to both counts --namely, that Defendant was "on board a vessel subject to the jurisdiction of the United Sates; that is, a vessel without nationality." Docket No. 14 at 2. More specifically, according to the Affidavit in Support of Criminal Complaint, when the law enforcement personnel from the HMS Lancaster conducted right-of-visit questions to determine the nationality of the vessel, neither Defendant nor the two other persons onboard made a claim of nationality. Docket No. 1-1 at 3. Furthermore, the vessel bore no visible sign of nationality. Id. For those reasons, the law enforcement personnel declared the vessel as one without

---

Section 70506, in turn, provides in relevant part:

(a) Violations.--A person violating section 70503 of this title shall be punished as provided in section 1010 of the Comprehensive Drug Abuse Prevention and Control Act of 1970 (21 U.S.C. 960). However, if the offense is a second or subsequent offense as provided in section 1012(b) of that Act (21 U.S.C. 962(b)), the person shall be punished as provided in section 1012 of that Act (21 U.S.C. 962).

(b) Attempts and conspiracies.--A person attempting or conspiring to violate section 70503 of this title is subject to the same penalties as provided for violating section 70503.

nationality[3] and then proceeded to board it in order to enforce United States law. Id. at 3-4. Defendant does not dispute these facts, nor does he even attempt to argue that the vessel wherein he was detained had a nationality. See Docket No. 65 at 3-9. Rather, he concedes the opposite in the Facts section of his Motion. Id. at 2 ("On August 9, 2013, [Defendant], a citizen of the Dominican Republic, was spotted aboard a vessel without flag . . . .").

In view of the undisputed statelessness of the vessel involved in this case, Defendant's argument that the lack of a jurisdictional nexus requirement renders the MDLEA unconstitutional is simply misplaced. It follows that a showing of statelessness moots the nexus requirement issue, in that international law allows the United States "to treat stateless vessels as if they were its own." Smith, 680 F.2d at 258. In other words, persons navigating the high seas aboard a vessel without nationality have effectively waived their rights to object to the exercise of jurisdiction over them by the United States.

---

[3] Although Defendant does not challenge the law enforcement personnel's declaration of the vessel as stateless, the Court notes that the First Circuit has held that, under international law, "a vessel may be deemed 'stateless,' and subject to the enforcement jurisdiction of any nation on the scene, if it fails to display or carry insignia of nationality and seeks to avoid national identification." Matos-Luchi, 627 F.3d at 6.

On account of the vessel's undisputed statelessness, exercise of jurisdiction under the MDLEA is constitutional as applied to this case. Smith, 680 F.2d at 258.

2. Spoliation of Evidence

Defendant also claims his due process rights were violated because the vessel in which he was apprehended was destroyed. Docket No. 65 at 9. He contends "that the boat was a necessary piece of evidence that could have been used for his defense and/or that it contained vital information necessary to the government to meet its burden of proving the case against him." Id. Defendant's arguments fail.

The Supreme Court has recognized that there can be a violation of a defendant's due process rights where the government destroys evidence in a criminal case, but not in all circumstances. See Arizona v. Youngblood, 488 U.S. 51, 57-58 (1988). With regard to evidence whose exculpatory value is apparent before its destruction, defendants need not show that the destruction was carried out in bad faith; on the other hand, where the "evidence [] was only 'potentially useful' for the defense, [] the defendant must establish the government's bad faith to show a [due process] violation." United States v. Laurent, 607 F.3d 895, 900 (1st Cir. 2010).

Other than asserting that the "boat was a necessary piece of evidence that could have been used for his defense," Docket

No. 65 at 9, Defendant does nothing to show that the destroyed evidence had apparent exculpatory value. Therefore, his remaining avenue to establish a due process violation required Defendant to make a showing that the government destroyed the vessel in bad faith. This, Defendant also failed to do. Indeed, he seems to concede the exact opposite --namely, that the destruction of the boat was not intentional. Id. ("The fact that the destruction of evidence was not intentional does not mean that it doesn't affect [Defendant's] rights to examine the evidence against him."). There being no evidence whatsoever of bad faith on the government's part, Defendant has failed to establish that his due process rights were violated.

## CONCLUSION

For the reasons stated above, Defendant's Motion, Docket No. 65, is hereby DENIED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 22nd day of December, 2014.

                                           s/ Jay A. Garcia-Gregory
                                           JAY A. GARCIA-GREGORY
                                           United States District Judge